IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 6, 2001

## STATE OF TENNESSEE v. RICHARD M. FAR, JR.

**Appeal as of Right from the Circuit Court for Rutherford County**
**No. F-45893      James K. Clayton, Jr., Judge**

---

**No. M1999-00644-CCA-R3-CD - Filed April 4, 2001**

---

On August 5, 1998, Richard M. Far, Jr., the Defendant and Appellant, was indicted by a Rutherford County Grand Jury for one count of arson and one count of setting fire to personal property. The Defendant was tried *in absentia*. At the close of the State's proof, the trial court granted the Defendant's motion for acquittal regarding setting fire to personal property. Following trial, the jury convicted the defendant of arson. After a subsequent sentencing hearing, also conducted *in absentia*, the trial court sentenced the defendant as a Range III, persistent offender to fourteen years incarceration. On appeal, the Defendant argues (1) that the trial court erred in excluding him from his trial, and (2) that the trial court erroneously sentenced the defendant. Because we find that rule 43 of the Tennessee Rules of Criminal Procedure prohibits trial *in absentia* when the defendant is not present at the beginning of trial, we reverse the judgement of the trial court and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded.**

JERRY SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, J., and JOE G. RILEY, J., joined.

Gerald L. Melton, District Public Defender; Russell N. Perkins, Assistant Public Defender, Murfreesboro, Tennessee, for the appellant, Richard M. Far, Jr.

Paul G. Summers, Attorney General & Reporter; David H. Finley, Assistant Attorney General, Nashville, Tennessee; William C. Whitesell, Jr., District Attorney General, Murfreesboro, Tennessee, for the appellee, State of Tennessee.

# OPINION

## Factual Background

The Defendant was indicted for one count of arson and one count of setting fire to personal property. At a pre-trial hearing, the Defendant informed the court that he was dissatisfied with his appointed counsel:

THE COURT: Mr. Far, I've got a letter from you and got it yesterday, didn't have a chance to read it until this morning. What's the problem?

DEFENDANT: I don't want to be represented by Mr. what's his-name right there. I don't feel that Mr. whatever --

THE COURT: Perkins.

DEFENDANT: -- Mr. Perkins has got my best interest at heart. I don't think he's representing me proper, and I'm not going in the courtroom with him. It's just that plain and simple.

THE COURT: You're not going into the courtroom?

DEFENDANT: I don't think he's giving me the best representation. I don't think he's representing me proper. You read my letter.

THE COURT: I read your letter. What concerns me about the whole thing, in your letter you were talking about wanting a speedy trial, that you've been in jail now for some months, --

DEFENDANT: Ten months, to be exact, sir.

THE COURT: We are ready to try the case this morning at your request from last week. Mr. Perkins has worked on your case for quite some time, is prepared to try the case this morning. We're ready to try it.

DEFENDANT: Okay. Let me just ask you. Let me ask Mr. Perkins a couple of questions.

MR. PERKINS (DEFENSE ATTORNEY): No, sir; I'm not going to answer your questions.

DEFENDANT: You're not going to answer my questions?

MR. PERKINS: No, sir; I'm not going to answer your questions here, not in front of all these people, no, sir.

THE COURT: He can't. That would be a violation.

DEFENDANT: Can me and Mr. Perkins talk in private then? I'm pretty sure me and him can get this settled if we can just talk in private for just one moment, Your Honor. We can go in a little room, Mr. Perkins.

MR. PERKINS: Rather than run the risk – if everybody could just excuse us.

MR. FAR: Please understand, Your Honor, there is no possible way that I want to go to trial with Mr. Perkins.

THE COURT: Well, you're going to have to go to trial with Mr. Perkins or represent yourself. You've got competent counsel here. I've observed Mr. Perkins over a number of years, and he's extremely competent.

MR. FAR: He probably is an excellent attorney, but I don't think he's got my best interest at heart. You see what I'm saying? He might represent a European or Caucasian the best way he can, but as far as a black man, I don't think he's got my best interest at heart.

THE COURT: Well, I've seen him represent all colors.

COURT REPORTER: Do you need me to step out, too?

MR. PERKINS: Yes, ma'am. I need you to step out.

DEFENDANT: You don't have to step out because – you need to understand if I live long enough, I --

MR. PRICE (PROSECUTOR): Mr. Far, I would suggest that you not threaten me.

DEFENDANT: I'm not threatening you.

MR. PERKINS: Judge, I've explained – for purposes of the record, I've explained to Mr. Far that it's not my decision whether I represent him or not, that that's yours.

THE COURT: You've been appointed by the Court and I don't change that.

For the purposes of the record, the court then placed the Defendant under oath, and the Defendant testified that he was dissatisfied with his court-appointed lawyer, Mr. Perkins, because Mr. Perkins

had not filed any pre-trial motions.  After the Defendant explained why he did not want Mr. Perkins to represent him, the colloquy continued as follows:

> MR. PRICE: Mr. Far, the trial goes forward today.  Are you wanting to go into the courtroom yourself, or do you want to stay outside the courtroom?

> DEFENDANT: I'm not a lawyer.  What would I look like going in there trying to represent myself?

> MR. PRICE: Do you want to go in or do you want to stay out?  Do you want to answer the question?

> DEFENDANT: Do you think I'm stupid?

> MR. PRICE: I'm just asking you the question.

> DEFENDANT: Do you?  That's what I'm asking you.  Do you think I'm stupid?

> MR. PRICE: Mr. Far, we're going to ask you a couple of questions.

> DEFENDANT: Could you answer my question?

> MR. PRICE: No sir, I'll not answer that question.

> THE COURT [to the Defendant]: You'll answer his questions.

> MR. PRICE: I'm just asking you, do you want to go into the courtroom during the trial, or do you want to be outside the courtroom during the trial?

> DEFENDANT: I do not want to go to trial without proper representation.

> MR. PRICE: All right, Your Honor, in light of all that's gone on here, if Mr. Far does not want to go into court --

> DEFENDANT: How do you want to force me to go to trial?

> . . . .

> MR. PRICE: Mr. Far, do you want to stay here for the trial?

> DEFENDANT: Look, can I go back?  I'm ready to go back.  Can you tell these people to take me back, please?

MR. PRICE: Mr. Far, do you understand that we're going forward with the trial?

MR. FAR: I don't understand nothing. Do I sound like I understand anything?

The argument continued until the Defendant suggested that he might be able to resolve his problems with his attorney:

DEFENDANT: Why don't you just let me talk with Mr. Perkins in private. We'll just – we'll just – let me just – we'll just go down the hall and talk, Mr. Perkins.

MR. PERKINS: I don't know what's going to be accomplished by that.

DEFENDANT: I don't know neither, but –

* * *

THE COURT: That's the only thing we can do but have a trial. I'll get out of here.

DEFENDANT: I think I'll just talk to Mr. Perkins for just a minute.

MR. PERKINS: Be glad to.

DEFENDANT: I really don't think that it's going to change, but it don't hurt to try to work things out.

The record indicates that Mr. Perkins then met privately with his client and that jury selection began shortly after that. During jury selection, the court informed the potential jurors that "the Defendant has chosen not to be here." After jury selection but prior to opening statements, Mr. Perkins told the court "I just wanted to put on the record that I have just tried to check with my client and check on his status. I was informed by the officers who were in charge of him that he is asleep. So I didn't wake him." The court proceeded to try the Defendant *in absentia.* At the close of the State's proof, Mr. Perkins went to speak with the Defendant, but the Defendant refused to talk to Mr. Perkins. Mr. Perkins then moved the court to enter a judgment of acquittal regarding the second count, setting fire to personal property, because there was no proof of damage. The trial court agreed and granted the defense motion. Before the jury deliberated on the remaining count, Mr. Perkins again tried to determine whether the Defendant wanted to be present, but the Defendant had informed the officers guarding him that he did not want to speak with Mr. Perkins.

The jury found the Defendant guilty of arson. At a subsequent sentencing hearing, a deputy informed the court that the Defendant refused to attend his sentencing hearing. Following the hearing, the trial court sentenced the defendant as a Range III, persistent offender to fourteen years incarceration.

## Right to Be Present at Trial

First, the Defendant claims that he was erroneously excluded from attending his trial. We must agree. Rule 43 of the Tennessee Rules of Criminal Procedure, entitled "Presence of the Defendant" provides, in relevant part,

> (a) Presence Required. Unless excused by the court upon defendant's motion, the defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
>
> (b) Continued Presence Not Required. The further progress of the trial to and including the return of the verdict and imposition of sentence shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present:
>
> (1) voluntarily is absent after the trial has commenced (whether or not he or she has been informed by the court of the obligation to remain during the trial), or
>
> (2) after being warned by the court that disruptive conduct will cause the defendant to be removed from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom. If a trial proceeds in the voluntary absence of the defendant or after the defendant's removal from the courtroom, he or she must be represented in court by competent counsel; and, if the defendant has been removed from the courtroom, he or she shall be given reasonable opportunity to communicate with counsel during the trial. If a trial is proceeding with the defendant excluded from the courtroom because of disruptive conduct, the court shall periodically determine at reasonable intervals whether the defendant will then signify willingness to avoid creating a disturbance if allowed to return to the courtroom and shall permit such return when the defendant so signifies and the court reasonably believes the defendant.

Tenn. R. Crim. P. 43. Based on the clear language of the rule, this Court has previously held that "the clear implication from the language 'initially present' and 'to be removed from the courtroom' is that Rule 43(b)(2) only allows the trial court to prevent a defendant from continued attendance at his or her trial when the defendant was initially permitted to attend the trial, but engaged in disruptive behavior *during* the trial." State v. Ballard, 21 S.W.3d 258, 261 (Tenn. Crim. App. 2000)(emphasis added).

Furthermore, in State v. Richard M. Far, Jr., another panel of this Court reversed the judgment of the trial court under circumstances similar to those in this case. No. M1999-01998-CCA-R3-CD, 2001 WL 208513, at *3 (Tenn. Crim. App. at Nashville, March 1, 2001).[1] In that case, the defendant engaged in extremely disruptive behavior prior to trial, and the defendant was tried and

---

[1] As the name suggests, that case involved the same defendant as the case *sub judice*.

sentenced *in absentia.* The State argued there, as it does here, that the defendant had notice of the time and place of his trial but voluntarily left the pre-trial meeting and thus waived his right to be present pursuant to State v. Kirk, 699 S.W.2d 814, 819 (Tenn. Crim. App. 1985) and State v. Marcus Anthony Robinson, No. 03C01-9512-CR-00410, 1997 WL 396241 (Tenn. Crim. App. at Knoxville, July 16, 1997). However, this Court found Kirk and Robinson "clearly distinguishable" from Far, as the defendants in those cases voluntarily fled while the defendant in Far was in custody and thus unable to voluntarily flee. State v. Richard M.. Far, Jr., 2001 WL 208513, at * 4. Such is the case here as well.

The Court in Far also noted that the holding in Kirk is suspect, because the federal cases on which Kirk based its holding have been overruled by the United States Supreme Court in Crosby v. United States, 506 U.S. 255, 260, 113 S. Ct. 748, 752, 122 L. Ed. 2d 25 (1993). State v. Richard M. Far, Jr., 2001 WL 208513, at *4.[2] Indeed, Judge Byers, the author of the Kirk decision, later indicated that the analysis in Crosby required a reexamination of Kirk "in the proper case." State v. Marcus Anthony Robinson, 1997 WL 396241, at *4 (Byers, J., concurring). This is such a case. Like the defendant in Kirk, the defendant in Crosby voluntarily fled prior to the commencement of his trial. Crosby, 506 U.S. at 256-57. Justice Blackman, writing for the unanimous Court, held that the plain language of rule 43 of the Federal Rules of Criminal Procedure (which substantially mirrors rule 43 of the Tennessee Rules of Criminal Procedure) "prohibits the trial *in absentia* of a defendant who is not present at the beginning of trial." Id. at 262. Although the Court in Crosby only concerned itself with a defendant who voluntarily left, rather than a defendant who was removed for disruptive behavior, Ballard mandates that the analysis is the same for a Defendant who is removed for disruptive behavior. Ballard, 21 S.W.3d at 261. Therefore, we hereby overrule the holding of State v. Kirk and adopt the reasoning of the United States Supreme Court in Crosby. We hold that Rule 43 only allows a trial *in absentia* when the defendant is first present at trial and then leaves, voluntarily or otherwise. In this case, because the record is unclear, we cannot determine whether the Defendant voluntarily left or was prohibited from entering the trial initially. However, as noted above, it makes no difference, because the key inquiry is whether the defendant was present at the beginning of trial. In this case, the Defendant was absent when trial commenced.

We also note that, if the defendant was excluded for disruptive behavior, rule 43 mandates that "the court shall periodically determine at reasonable intervals whether the defendant will then signify willingness to avoid creating a disturbance if allowed to return to the courtroom and shall permit such return when the defendant so signifies and the court reasonably believes the defendant." Tenn. R. Crim. P. 43(b)(2). In this case, although the Defendant's attorney, Mr. Perkins, made at least three attempts to communicate with the defendant, all of the attempts were unsuccessful. Most importantly, Mr. Perkins's first attempt was unsuccessful because the Defendant was asleep and Mr. Perkins did not want to wake the Defendant. Although the Defendant subsequently refused to speak with Mr. Perkins, the trial was virtually over by the time Mr. Perkins again tried to communicate with the Defendant. This is not the type of periodic determination envisioned by the rule.

---

[2]Recently, the Tennessee Supreme Court in State v. Carruthers, 35 S.W.3d 516, 567-68 (Tenn. 2000) appeared to cite Kirk with approval. However, the Carruthers opinion makes no mention of Crosby. Further, the facts of Carruthers involve a defendant who was initally present at trial, but absented himself prior to sentencing. Under these circumstances we believe that Carruthers does not control the holding in this case.

Nor can we find the error harmless. A defendant's presence at trial permits the defendant to confront and observe witnesses; to make suggestions to his lawyer; to observe evidence introduced by the State; to absorb information that may be important on appeal or in a later petition for post-conviction relief; and to exercise his right to testify if necessary. We conclude that the error in this case involved a substantial right, the denial of which would result in prejudice to the judicial process. Tenn. R. App. P. 36 (b); see also State v. Muse, 967 S.W.2d 764, 768 (Tenn. 1998)(holding that a defendant's absence from jury selection was not subject to harmless error analysis and required automatic reversal). Accordingly, we must reverse this case and remand it to the trial court for a new trial.

Because the language of rule 43 mandates reversal, resolution of the Defendant's constitutional claims is unnecessary. However, in order to provide further clarification and in the event of further review, we will briefly address the merits of the Defendant's claim that he was denied his constitutional right to be present at trial.

The right of an accused to be present at his own trial is fundamental and derives from several sources, including the Tennessee and United States Constitutions. Muse, 967 S.W.2d at 766. There is a presumption against waiver of fundamental constitutional rights. Id. at 767 (citing Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938)). Moreover, such rights may only be waived personally, and the relinquishment of such rights will not be presumed from a silent record. Id. (citing House v. State, 911 S.W.2d 705, 714 n. 20 (Tenn. 1995)). In order to waive the right to be present at trial, the record must reflect that the accused had knowledge of his right and personally waived the right either in writing or in open court. Id. at 768; see also Far, 2001 WL 208513, at *7. The record in this case reflects no such waiver. Indeed, the record only reflects that the Defendant retired with Mr. Perkins to discuss the case, and jury selection began shortly thereafter. Although much of the pre-trial hearing transcript indicates that the court and the prosecutor threatened to try the defendant *in absentia*, the Defendant expressly stated that he did not understand his right, and in fact indicated that he might wish to exercise it. In short, the facts in this case indicate that the defendant did not effectively waive his constitutional right to be present at his trial.[3] Thus, even if Rule 43 of the Tennessee Rules of Criminal Procedure had not mandated reversal, the Tennessee and United States Constitutions would.

## Sentencing

---

[3]The Defendant has not specifically challenged his absence at the sentencing hearing. However, we emphasize

that in the event there is another conviction and a necessary sentencing hearing upon remand, that the trial court should ensure that the Defendant is aware of his constitutional and statutory rights to attend his sentencing hearing, prior to holding the sentencing hearing in Defendant's absence. . . . Furthermore, prudence might dictate that the trial court exercise its right to require the Defendant to attend his sentencing hearing, subject to being removed if he becomes disruptive.

State v. Richard M. Far, Jr., No. M1999-01998-CCA-R3-CD, 2001 WL 208513, at *3 (Tenn. Crim. App. at Nashville, March 1, 2001).

The Defendant also challenges his sentence. Although this issue is technically moot, we elect to address it in case of further review and to provide the trial court with some guidance in the event of another conviction.

At the sentencing hearing, the State's proof consisted of the testimony of two witnesses. The first witness was Jennifer Brittain, a probation officer. Ms. Brittain testified that, although the Defendant was unwilling to speak with her, her investigation of the Defendant's background indicated a relatively lengthy criminal history spanning several states. Her investigation also revealed that the Defendant had used six or seven social security numbers and twenty-five aliases. Ms. Brittain testified that the Defendant had been convicted of forgery in Wyoming in 1981, forgery in California in 1985,[4] and forgery in Indiana in 1994, and she produced documentation of those convictions. She then introduced an abstract received from Indiana which indicated that the Defendant had also been convicted of fraud on a financial institution in Indiana in 1995.[5] Ms. Brittain also testified that the Defendant had been convicted of assault with intent to rob in Maryland in 1975 and attempted larceny and pickpocketing in Maryland in 1976, although she did not have documentation that reflected those convictions.

The State's next witness was Darene Steadman, a transportation officer for the Rutherford County Sheriff's Office. Officer Steadman testified that she had transported the Defendant to and from jail recently, and while doing so, she heard him threaten her, the Defendant's attorney, the judge and the prosecutor in this case.

At the conclusion of the hearing, the trial court held as follows:

> I do feel that [the Defendant] had prior convictions that would make him a persistent offender and a Range III offender, as previously put into evidence and marked. Therefore, I would sentence him to 14 years as a persistent 45 percent, Range III offender to the Tennessee Department of Corrections.

The Defendant was convicted of arson, a class C felony. As a Range III offender, the Defendant was eligible for a sentencing range of between ten and fifteen years. Tenn. Code Ann. § 40-35-112. Other than the difference in the class of felony, the sentencing hearing in this case appears to have been conducted in an identical manner as the sentencing hearing in Far. As this Court noted in that case,

> In order to have [the Defendant] found to be a 'persistent offender' pursuant to Tennessee Code Annotated section 40-35-107, the State must show that he has a combination of 'five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes, where applicable.' Tenn. Code Ann. § 40-35-107(a)(1). Furthermore, Tennessee Code Annotated section 40-35-107(b)(5) states that ' 'prior convictions' includes convictions under the laws

---

[4] Actually, while the exhibit indicates that the Defendant served his federal sentence in California, he pled guilty to forgery in the United States District Court in the Southern District of Ohio.

[5] The prosecutor argued that the abstract contained two qualifying felonies: the fraud on a financial institution and one count of forgery. From our reading of the record, however, it appears that the forgery charge was the same one she had testified about previously.

of other any other state . . . if committed in this state, would have constituted an offense cognizable by the laws of this state.' If the conviction in the other state is not a named felony in Tennessee, the elements of the offense committed in the other state must be used to determine what classification the offense is given in a Tennessee court. Tenn. Code Ann. § 40-35-107(b)(5) (1997). Tennessee Code Annotated section 40-35-107(b)(3) states that when an offense is committed as a juvenile, it cannot be considered as a prior conviction unless the juvenile is convicted of a felony in criminal court. At most, Defendant has convictions for seven prior felonies. However, the information in the pre-sentence report is sketchy and questionable. It is impossible to tell from the record whether the convictions for offenses committed as a juvenile and the convictions in states other than Tennessee, meet the requirements necessary to classify Defendant as a 'persistent offender' under 40-35-107(b)(3) and (b)(5). In the event of another sentencing hearing, in order to uphold the sentence of 'persistent offender,' the trial court should make additional findings of fact based upon more conclusive evidence than what is presently contained in the pre-sentence report. We note that before a Defendant can be sentenced within Range III, the court must find him, 'beyond a reasonable doubt,' to be a persistent offender. Tenn. Code Ann. § 40-35-107(c). In addition, the trial court did not state the specific enhancement factor used to elevate the sentence . . . . In State v. Jones, 883 S.W.2d 597, 599-600 (Tenn. 1994), our supreme court said that '[t]o facilitate meaningful appellate review . . . the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.'

State v. Richard M. Far, Jr., 2001 WL 208513, *11-*12.

Accordingly, the judgment of the trial court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

_____
JERRY L. SMITH, JUDGE