# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 13, 2005 Session

## TRISTA LARAE DENTON, ET AL. v. CHRISTOPHER LORN PHELPS

### Appeal from the Circuit Court for Knox County
### No. 94704     Bill Swann, Judge

---

### No. E2005-00101-COA-R3-CV - FILED OCTOBER 12, 2005

---

Orders of Protection were either largely ignored or scornfully defied by the defendant with the sometime quiescense of the plaintiff who was possibly afflicted with the Stockholm Syndrome. Her father intervened and presented a motion for contempt against the defendant which resulted in the defendant's conviction of eleven (11) instances of criminal contempt. The defendant refused to attend the trial because of his later asserted and ill-based fear that he would not have a fair trial, and he was tried *in absentia.* Days later, he was tried and convicted of another nine (9) discrete violations of the Order of Protection. The defendant assails the first convictions as violative of his constitutional rights. In light of *State v. Far*, 51 S.W.3d 222 (Tenn. Ct. Crim. App. 2001) "that a trial *in absentia* [is allowable] only when the defendant is first present at trial" the eleven (11) convictions at the first trial are reversed. The nine (9) convictions at the second trial are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

James M. Crain, Knoxville, Tennessee, attorney for appellant, Christopher Phelps.

John D. Lockridge, Knoxville, Tennessee, attorney for appellee, Trista Denton.

William C. Cremins, Knoxville, Tennessee, attorney for intervening appellee, Harley Denton.

### OPINION

An Order of Protection was issued on September 24, 2003 against the respondent ["Phelps"] pursuant to Tenn. Code Ann. § 36-3-601, *et seq.* The statutory scheme provides a "swift and efficient summary proceeding" for victims of domestic abuse with enhanced protection from such abuse, and to prevent further harm to the victim. *See, Clark v. Crow*, 37 S.W.3d 919 (Tenn. Ct. App. 2000).

The plaintiff appears to have become addicted to Phelps notwithstanding his propensity for violent conduct and his inhumane treatment of her. She is thirty years old, unmarried and has one child. Phelps is her intermittent boyfriend, and is thirty-six years old. The Order of Protection prohibited domestic abuse, threats of abuse, stalking, coming about, telephoning, or communicating with the plaintiff in any way. The plaintiff's father was allowed to intervene on behalf of his daughter, alleging that Phelps was manipulating and controlling her, and abusing and imprisoning her. The intervention was not objected to.

The intervenor filed a motion for criminal contempt against Phelps, alleging that he was violating the Order of Protection by living with her, menacing her, and committing acts of violence. The motion was scheduled for hearing on August 13, 2004, but neither the plaintiff nor Phelps appeared. At the second hearing on September 20, 2004 the plaintiff testified, when asked about her failure to appear for the earlier hearing, that "Phelps wouldn't allow me to."

Phelps, by counsel, moved for a continuance which was denied.[1] The hearing was conducted and Phelps was found guilty of eleven (11) instances of violating the Order of Protection and was sentenced to ten (10) days imprisonment and a $50.00 fine for each violation. The investigating officer's testimony - replete with hearsay - established the violations of the Protective Order. A capias was issued for Phelps, and a new Protection Order was entered.

On September 10, 2004, the plaintiff filed a motion alleging further acts of contempt by Phelps. Five days later, the intervenor filed a motion seeking to reopen the first hearing to allow her to testify. These motions were heard on September 30, 2004, and resulted in a judgment that Phelps was guilty of nine (9) additional violations of the Order of Protection. He was sentenced to ten (10) days imprisonment for each violation, but only one fine of $50.00 was assessed.[2]

Phelps appeals and presents for review thirty-five (35) issues, only a few of which require appellate review. Factual findings are reviewed *de novo*, with a presumption that the judgment is correct unless the evidence otherwise preponderates, Rule 13(d) Tenn. R. App. P., subject to the constitutional principle that findings of guilt in a case of criminal contempt must be supported by proof beyond a reasonable doubt. ***State v. Matthews***, 805 S.W.2d 776 (Tenn. Crim. App. 1990).

The First Hearing

The principal issues concern the trial of August 13, 2004, resulting in a finding of guilt for eleven (11) violations of the Order of Protection. As stated, Phelps did not appear for trial. He was convicted *in absentia*, the asserted invalidity of which is presented for review. This issue spawned

---

[1] Phelps declined to appear because of his asserted fear that he would not have a fair trial. This purported reason was not made known to his counsel before trial, who, in any event, stated that he would not have sought a recusal.

[2] He was also charged with and indicted for aggravated assault.

a host of lesser included issues which need not be specifically discussed in light of our disposition of the underlying action.

In *State v. Kirk*, 699 S.W.2d 814 (Tenn. Crim.. App. 1985) the defendant had notice of the trial but voluntarily fled. He was convicted *in absentia*, and the conviction was affirmed on appeal because his flight was equated to waiver of his right to be present. *Kirk* was essentially premised on the opinions of various Federal cases which were later overturned in *Crosby v. United States*, 506 U.S. 255, 113 S. Ct. 748, L. Ed.2d 25 (1993). In *Crosby*, the Court held that Rule 42 of the Federal Rules of Criminal Procedure (which mirrors Rule 43 of the Tenn. R. Crim. P.) prohibits the trial *in absentia* of a defendant "who is not present at the beginning of trial."

In *State v. Far*, 51 S.W.3d 222 (Tenn. Crim. App. 2001) the defendant was present in the courtroom before the trial began. He objected to his assigned attorney, and engaged in calculated conduct when the case was called for trial. He and his counsel retired from the courtroom to confer. The defendant chose not to return to court but the trial nevertheless commenced and concluded resulting in a verdict of guilty. On appeal, the Court of Criminal Appeals, citing *Crosby*, held:

> We hereby overrule the holding of *State v. Kirk* and adopt the reasoning of the U.S. Supreme Court in *Crosby*. We hold that Rule 43 only allows a trial *in absentia* when the defendant *is first present at trial* and then leaves, voluntarily or otherwise.[3] [Emphasis added.]

Phelps was admittedly "not first present at trial" and his conviction *in absentia* cannot be sustained, in light of *Crosby* and *Far.* The judgment finding Phelps guilty of eleven (11) violations of the Order of Protection is accordingly reversed and the case is remanded for a new trial as to these violations.

Many of the issues Phelps presents for review are exegetic or subsumed by the dispositive issue concerning his trial *in absentia*, and need not be discussed. But the issue of the intervenor's standing to prosecute Phelps requires a resolution.

The plaintiff's father was allowed, without objection, to intervene on behalf of his adult daughter, apparently to "save her from herself" because of her seeming addiction to the purported cruelty of Phelps. The record indicates that she was afflicted with the Stockholm Syndrome at times. The plaintiff, apparently in better times, had given her father her power of attorney, couched in broad language, upon which he relied to seek intervention on behalf of his daughter.

Phelps argues that the controlling statute, Tenn. Code Ann. § 36-3-602, does not authorize the enforcement of an Order of Protection by an agent. The statute provides that "any victim . . . . of domestic abuse. . . . may seek relief" by filing a sworn petition alleging such domestic abuse. The

---

[3] While *Crosby* and *Far* were expounding a Rule of Criminal Procedure, we think it clear that the rational is entirely apposite to the case at Bar.

intervenor, of course, is not a "victim," but we discern no reason why, under the peculiar circumstances, the intervenor cannot be treated as the next friend of the victim.  The record indicates that she arguably was suffering from a mental disability during her various tenures with Phelps and the allowance of the intervention and subsequent prosecution in no way prejudiced Phelps.  We hold that the intervenor had the requisite standing to prosecute this action.  On retrial, the Motion to Enforce the Protection Order may  be amended to allege with more particularity the specific instances of purported violations of the Order.

### The Second Hearing

The hearing of September 20, 2004 resulted in Phelps' conviction of nine (9) violations of the Order of Protection.  The motion to enforce was filed by the plaintiff, *eo nomine*, and alleges:

> On 09-05-04, at approx. 5:45 am Chris assaulted Me at the Morris Motel, 6262 Clinton Hwy. in rm# 12B.  Chris struck Me and tried to knock Me down.  I then tried to leave but He grabbed Me and threw Me on the couch.  While He had Me pinned to the couch with His own body, He tried to cut My left wrist with His knife.  After struggling to get loose from His hold I tried a 2nd time to leave.  Striking at Me with His knife He slashed and ripped My sweater.  Chris then grabbed Me by the hair jerking and pulling Me backwards, tried to punch Me in the face.  Thru the entire attack Chris was threatening to kill Me, My Son Hunter and my Mom + Dad.  The entire relationship I've had with Chris has been controlled by death treats and threats.  He would have His Grandmother (Barbara Williford) Have me arrested for stealing.  He held Me against my will in His Grandmother's half sister's Apt. (#522) (Patricia Burkett) in the Guy B. Love Towers.  This motel rm. was one of several rented by His Grandmother to keep Him in hiding after being sentenced to jail on 8-13-04.  He has kept Me from seeing or contacting My family.
>
> Signed *Trista L. Denton*
> PETITIONER

Phelps argues that the motion failed to apprise him sufficiently of the specific instances of the violations of which he was accused and convicted.  We disagree.  The trial court found Phelps guilty beyond a reasonable doubt of holding the plaintiff against her will on two occasions, and on seven occasions committing acts of violence towards her.  The evidence supports these convictions beyond a reasonable doubt.

Phelps argues that it is not possible "for him or for this court" to determine what "he was convicted of doing" and for this reason he has been denied due process.  The plaintiff testified that she and Phelps had been living at the Morris Motel in South Knoxville for several weeks [in violation of the Order of Protection]; that Phelps' grandmother paid for the room; that on September 5, Phelps began to excoriate her by calling her a bitch, trash, and "could kill her and her family"; that she tried to leave the motel, and Phelps pulled her to the ground; then he "cut me with a knife" and pulled her down on a couch; that she tried to escape, and Phelps grabbed the back of her sweater

which he cut, grabbed her by her hair; pulled her down on the couch for the third time; that she then escaped, and saw the motel owner to whom she called for help. Phelps then left the premises. Plaintiff further testified that Phelps threatened her if she testified against him, and that he would "kill my family," and that "when he gets out of jail he will come for me and will try to harm me . . . . tomorrow or ten years from now." These threats had been made earlier on September 5 and on July 3, including a threat to kill her eight-year-old son, according to the plaintiff. She testified that Phelps held her against her will "anywhere I resided with him," specifically at 1616 Washington Pike and at Love Tower, and other places. She testified that Phelps cursed and threatened her "every day." The testimony of the plaintiff is more elaborative than we have recited. Phelps did not testify, relying upon his asserted constitutional right not to do so.

The testimony of the plaintiff is sufficient beyond a reasonable doubt to convict Phelps on the nine (9) violations. Phelps argues that ***Varley v Varley***, 934 S.W.2d 659 (Tenn. Ct. App. 1996) supports his argument that his convictions are based on "unspecified matters." We disagree. The testimony of the plaintiff is graphic and sufficiently specific as to time and place of the violations. The judgment of conviction of the nine (9) instances of the violation of the Order of Protection is affirmed.

We have considered the remaining issues and find them to be without merit.

The case is remanded to the trial court for such further actions as may be deemed appropriate. Costs are assessed to the parties equally.

_____
WILLIAM H. INMAN, SENIOR JUDGE