IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 25, 2013 Session

**STATE OF TENNESSEE v. MARK A. VESTAL**

**Appeal from the Criminal Court for Knox County**
**Nos. 91290, 91291 & 91292     Bob R. McGee,  Judge**

_____

**No. E2012-00913-CCA-R3-CD - Filed August 7, 2013**

_____

In three separate cases tried together, a Knox County jury convicted the Defendant, Mark A. Vestal, of two counts of the sale of more than 0.5 grams of cocaine, one count of the sale of less than 0.5 grams of cocaine, and two counts of the delivery of less than 0.5 grams of cocaine. The trial court merged some of the convictions and entered judgments of conviction for: two counts of the sale of more than 0.5 grams of cocaine and one count of the sale of less than 0.5 grams of cocaine. The trial court sentenced the Defendant to a total effective sentence of sixty years in the Tennessee Department of Correction ("TDOC"). On appeal, the Defendant contends that the trial court erred when it: (1) excluded him from voir dire without advising him that he had a constitutional right to be present for jury selection; and (2) ordered that his sentences run consecutively. After a thorough review of the record and relevant authorities, we conclude that the trial court erred when it failed to inform the Defendant that he had a constitutional right to be present during jury selection. The Defendant's judgments of conviction are reversed, and the case is remanded for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Gerald L. Gulley, Jr. (on appeal) and Mitchell Harper (at trial), Knoxville, Tennessee, for the appellant, Mark A. Vestal.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber and John Bledsoe, Assistant Attorneys General; Randall Nichols, District Attorney General; Jennifer Welch and Philip Morton, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## I. Facts

This case arises from the Defendant selling cocaine to a confidential informant on several different occasions. For his actions, a Knox County grand jury returned three presentments charging the Defendant with various offenses. In case number 91290, the presentment charged the Defendant with one count of selling more than 0.5 grams of cocaine and one count of delivering less than 0.5 grams of cocaine, both of which occurred on February 11, 2009. In case number 91291, the presentment charged the Defendant with one count of selling more than 0.5 grams of cocaine and one count of delivering more than 0.5 grams of cocaine on February 4, 2009. The presentment further alleged that the intended recipient of the controlled substances was, at the time of the offense, under eighteen years of age. In case number 91292, the presentment charged the Defendant with selling less than 0.5 grams of cocaine and delivering less than 0.5 grams of cocaine on January 26, 2009. After a trial, the jury convicted the Defendant of the indicted offenses.

On appeal, the Defendant does not contest the sufficiency of the evidence supporting his convictions. The Defendant presents two arguments on appeal. The first is that the trial court improperly excluded him from voir dire and the second is that the trial court erred when it sentenced him. We will discuss herein the facts relevant only to the issues presented by the Defendant on appeal.

## A. Voir Dire

On the day of trial, but before the trial, the Defendant addressed the trial court about the discovery provided to him by the State. He said that he had not received the discovery in enough time to research the issues relevant for trial. The Defendant informed the trial court that he had been trying to remove his trial counsel ("Counsel") from his case for over a year. The trial court informed the Defendant that the case was scheduled for trial, that Counsel was a "fine lawyer," and that the trial court was not going to reschedule the trial. After this ruling, the Defendant continued to argue with the trial court. The trial court repeatedly asked the Defendant to sit down and stop talking. The Defendant continued talking, and the trial court informed him, "[I]f you continue speaking, you'll have to go to the dock, you won't be able to be here. It would be much better for your case if you will be quiet and observe what's going on." The Defendant responded, "I'd rather go to the dock, sir." The trial court informed the Defendant that it was his choice not to be present and that Counsel would come back and explain to him how things were going. The Defendant said, "Like I said . . . I fired [Counsel], so he no longer represents me." The trial court informed the Defendant that the Defendant had expressed his desire to go to the dock and that the trial court would comply with that request.

The Defendant was then removed from the courtroom, and the trial court discussed with the parties how they would handle his lack of presence during voir dire. The trial court proposed that the jury venire be informed that the Defendant was in the court house, had been offered the opportunity to be present and observe the trial, and had chosen not to be present. The court officer informed the trial court that he may have to place a chain on the Defendant because the Defendant had already been "combative" with officers.

Voir dire was then conducted and a jury selected. The State asked permission to dismiss Count 2 in presentment 91291, proceeding only on the charge of the sale of more than 0.5 grams of cocaine in that case number. The trial court granted the State's motion to dismiss. The trial court then clarified for the record that the Defendant had made a motion to absent himself from the courtroom and that the trial court had granted the Defendant's motion.

The trial court stated:

[L]et the record show that because of the [D]efendant's disruptive behavior this morning, he started making pro se motions, he wanted to fire his lawyer, he wanted to – obviously wanted to postpone the case, a delaying tactic clearly. These cases are about two years old now, so there's been plenty of time to do whatever needed to be done. And in the process of trying to get him to calm down and take his seat, he kept talking over the Court, refused to remain silent, and at that point indicated to the Court that he preferred to sit in the dock, that he didn't want to be here. So the Court granted him that request.

And because of that, because of the disruptive outbreak, the . . . court security has placed a shock bracelet around his ankle – somewhere around his leg – that will be used to subdue him should he become disruptive again.

**B. Trial**

The evidence at the Defendant's trial, in the light most favorable to the State, proved that a confidential informant approached officers about the Defendant who was selling drugs in his neighborhood. The informant had known the Defendant for between four to six years, and the two had interacted on "hundreds" of occasions. The informant and law enforcement officers described three occasions when the informant purchased drugs from the Defendant. The first was on June 26, 2009, when the informant purchased powder cocaine from the Defendant. The informant arranged the purchase with the Defendant during a telephone call, went to the Defendant's house with an officer in the car, entered the house, and told the Defendant he wanted to purchase "a 40," which meant $40.00 worth of cocaine. The Defendant, who kept the cocaine, baggies, and scales in a baby wipe container, weighed out

the proper amount of cocaine. The informant gave the drugs to police and wrote a statement about what had occurred. The confidential informant wore a recording device during the drug transaction, and a tape recording of the transaction was played for the jury. The cocaine purchased on this occasion was tested by the Tennessee Bureau of Investigations ("TBI") and determined to weigh 0.3 grams.

On February 4, 2009, the confidential informant again purchased drugs from the Defendant. He called the Defendant to ask if the Defendant had "an eight ball," which was one eighth of an ounce of cocaine and costs between $150 and $250. The Defendant told the informant he wanted $200 for the eight ball, and the informant attempted to negotiate a lower price. The police officer with whom the informant was working then picked him up, gave him $200, and drove him to the Defendant's house. The informant entered the house, purchased the cocaine, exited the house, and gave the cocaine to the officer. The confidential informant said he went back to the police department and created a written statement of what had occurred. A tape recording of this transaction was also played for the jury. On the recording, the informant is heard asking the Defendant if he can return later that day and buy another eight ball for some buyers. The Defendant said yes. The cocaine purchased on this occasion was tested by the TBI and determined to weigh 2.9 grams.

On February 11, 2009, the informant again purchased cocaine from the Defendant. The informant said this transaction went a little differently in that there was a woman there when he arrived who was trading pills for cocaine. The informant said he had to wait until her transaction was completed before he could purchase cocaine from the Defendant. After purchasing cocaine from the Defendant, the confidential informant went back to the police station with the officer and wrote a statement. A tape recording of this transaction was also played for the jury. The cocaine purchased on this occasion was tested by the TBI and determined to weigh 3.0 grams

After the informant testified, the trial court excused the jury. The trial court then brought the Defendant into the courtroom for an "identification procedure." Out of the presence of the jury, the trial court informed the Defendant that he was entitled to stay "as long as [he] behave[d] himself." The jury was returned to the courtroom, and the informant identified the Defendant as the man who had sold him drugs.

After the conclusion of the State's proof, and out of the presence of the jury, the trial court spoke with the Defendant and noted that he had been present during the trial with the exception of jury selection and the direct examination of the informant. The trial court then inquired about whether the Defendant wanted to testify, and the Defendant chose not to testify.

The jury convicted the Defendant of two counts of the sale of more than 0.5 grams of cocaine, one count of the sale of less than 0.5 grams of cocaine, and two counts of the delivery of less than 0.5 grams of cocaine.

## B. Sentencing Hearing

At the Defendant's sentencing hearing, the State entered certified copies of the Defendant's prior convictions. The informant then testified that he referred to the Defendant as "Powder Mark," because the Defendant was one of the only dealers from whom he could purchase powder cocaine. The informant said he began purchasing drugs from the Defendant in 2006, and he regularly purchased cocaine from him between 2006 and 2009. The informant said that he purchased cocaine for personal use and also for resale, purchasing between $20 to $40 worth for personal use and as much as a seven grams of cocaine when purchasing the drugs for resale. He regularly saw other people purchasing cocaine from the Defendant.

Based upon this evidence, the trial court sentenced the Defendant, finding:

There's only one real issue here and that's whether to sentence the [D]efendant to consecutive sentences. . . . [T]here's only one sentence in the career criminal category. And for the class B that's 30 years to be served at 60 percent. And Class C is 15 years at 60 percent.

The legal considerations the Court is supposed to apply when determining whether or not to sentence to consecutive sentencing I have reviewed, and . . . although you can always argue about these things, but clearly the first two considerations do apply. The [D]efendant is a professional criminal who's knowingly devoted such – his life to criminal acts as a major source of his livelihood, that appears to be very clear.

And the second one, the [D]efendant is an offender whose record of criminal activity is extensive. That, obviously, is clear.

Other statutory considerations that usually the Court applies in determining where to sentence within the range don't technically apply here, but consideration of some of them is – helps the Court to come to a determination of what to do here. That the [D]efendant does have a history of criminal convictions and criminal behavior in addition to those necessary to establish the appropriate range. I do believe that applies here.

And the offense involved more than one victim. The Court is very concerned about that. Crack cocaine is a poison, and I don't know how much of our criminal caseload is attributable just to dealing in crack, people under the influence of it, committing crimes against each other, people – innocent men, women and children getting shot to death in their own homes by drive-by shooters who have tried to protect their territory for the sale of crack. And just the people whose lives are wasted by the drug. It's a terrible scourge in our community.

And considering the [D]efendant's record, and considering the circumstances of this offense, that this was an ongoing operation for years with multiple customers, who that also means multiple victims, large amounts of the drug, the Court does find that consecutive sentencing is justified. And the Court will sentence in . . . presentment 91290, count one, the Court does now sentence the [D]efendant to – this is a Class B felony, the Court does now sentence the [D]efendant to . . . 30 years as a career offender. Count two will merge with count one.

In presentment 91291, the [D]efendant having been found guilty of the sale of more than .5 grams of a controlled substance, the Court does now sentence the [D]efendant to 30 years as a career offender.

And in presentment 91292, the [D]efendant having been found guilty by the jury of sale of less than .5 grams, a Class C felony, the Court does now sentence the [D]efendant to 15 years as . . . a career offender . . . . [C]ount two will merge into count one.

. . . .

. . . . As for the manner of service, the Court will order that the sentence – the 30 year sentence in presentment 91291 shall run consecutively to the sentence imposed in count one of the presentment 91290. And the Court will order that the sentence in count one of the presentment 91292 will run concurrently with the sentence imposed in 91290.

The Defendant's total effective sentence was sixty years in TDOC. It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it removed him from the courtroom during voir dire because the trial court failed to first advise him of his constitutional right to be present for jury selection. The Defendant also contends that the trial court erred when it ordered that his sentences run consecutively.

## A. Voir Dire

The Defendant asserts that the trial court erred when it failed to advise him of his constitutional right to be present and assist his counsel during jury selection, thereby preventing him from knowingly, intelligently, and voluntarily waiving that right. The State concedes that the trial court erred, and it agrees that this Court should reverse the judgment of the trial court and remand the case for a new trial. We agree with the parties.

Criminal defendants have the right to be present at all stages of the trial, including sentencing. Tenn. R. Crim. P. 43(a); *see also State v. Muse*, 967 S.W.2d 764, 766-67 (Tenn. 1998); *State v. Ballard*, 21 S.W.3d 258, 262 (Tenn. Crim. App. 2000). This fundamental constitutional right, however, may be waived. Rule 43(b); *Muse*, 967 S.W.2d at 767-68 (citing *State v. Kirk*, 699 S.W.2d 814 (Tenn. Crim. App. 1985)). The relinquishment of a fundamental constitutional right may only be waived personally by the defendant and will not be presumed from a silent record. *Muse*, 967 S.W.2d at 768 (citing *House v. State*, 911 S.W.2d 705, 714 n.20 (Tenn. 1995)). In order to waive the right to be present for voir dire, a defendant must have knowledge of the right and, before voir dire is conducted, must personally waive the right either in writing or on the record in open court. *Id.* Rule 43 also provides that a defendant can waive his right to appear if, after present initially and filing a motion, he "[v]oluntarily is absent after the trial has commenced." The Rule also contemplates that a defendant may be removed from the courtroom for disruptive behavior.

In *Muse*, a case discussing whether or not a defendant may waive the right to be present during jury voir dire, our Supreme Court acknowledged that there is a long-standing presumption against the waiver of fundamental constitutional rights. 967 S.W.2d at 767. The Court held that waiver would not be presumed from a silent record, and that in order for a defendant to waive his or her right to be present during voir dire, the defendant must personally waive the right in writing or on the record in open court. *Id.* at 768. In *Muse*, the trial court rescheduled the jury selection at counsel's request, but the defendant was personally unaware of this. When jury selection began a day earlier than originally scheduled, the defendant did not appear. The Supreme Court held that it was automatic reversible error for a trial court to conduct jury selection without the presence of the defendant. The Supreme Court stated:

> Having determined that the defendant's statutory and constitutional rights were
> violated by conducting voir dire in his absence, the final issue is whether the

-7-

error committed in the trial court may be considered harmless. Certain constitutional rights are so basic to a fair trial that their infraction has never been treated as harmless. A defendant's right to be present during jury selection is such a right. Here, the defendant observed not a single prospective juror, heard not a single response to the court's questions concerning personal and general matters, and participated in not a single peremptory challenge. The defendant had no opportunity to give advice or make suggestions to his lawyer. The Court concludes that without an effective waiver the defendant's absence from the entire voir dire proceeding resulted in such prejudice to the judicial process that automatic reversal is required.

967 S.W.2d at 768 (citations and internal quotations omitted). We note that this Court has repeatedly held that automatic reversal is required when a defendant's constitutional and statutory rights to be present at his trial have been violated. *See State v. Far*, 51 S.W.3d 222, 227-28 (Tenn. Crim. App. 2001); *Ballard*, 21 S.W.3d at 262.

In the case under submission, after appearing in court, the Defendant voluntarily requested to absent himself from the courtroom. Arguably, the Defendant's request constitutes a motion to excuse himself from the courtroom as contemplated by Rule 43. The trial court, however, did not ensure that the Defendant understood he had a constitutional right to be present during jury selection and that he was waiving that right by absenting himself from the courtroom. We are constrained, therefore, to reverse the judgments of conviction and remand the case for a new trial.

### D. Sentencing

The Defendant contends the trial court erred when it imposed consecutive sentences based upon multiple drug buys, resulting in the severity of his sentence being based upon the number of drug buys conducted by the officers rather than upon the severity of his crimes. The State contends that the trial court properly ordered consecutive sentences based upon the Defendant's extensive criminal history and the fact that the Defendant was a professional criminal. While the Defendant, if convicted, will be resentenced at the conclusion of his next trial, we address this issue on its merits so as not to pretermit any issue properly before this Court.

Consecutive sentencing is a matter addressed to the sound discretion of the trial court. *State v. James*, 688 S.W.2d 463, 465 (Tenn. Crim. App. 1984). A trial court may order multiple sentences to run consecutively if it finds, by a preponderance of the evidence, that at least one of the seven statutory factors exists. T.C.A. § 40-35-115(b)(1)-(7) (2010). In addition to these criteria, consecutive sentencing is subject to the general sentencing principle that the length of a sentence should be "justly deserved in relation to the seriousness of the

offense" and "no greater than that deserved for the offense committed." T.C.A. § 40-35-102(1), -103(2) (2010); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).

In this case, the trial court found the following consecutive sentencing criteria applicable:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;

T.C.A. § 40-35-115(1) and (2).

We conclude that the evidence supports the trial court's imposition of consecutive sentences based upon these findings. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based on the above mentioned reasoning and authorities, we conclude that the Defendant's fundamental constitutional right to be present in the courtroom was violated. Accordingly, we reverse the judgments and remand the case for a new trial. In the event of further review, and in order to not pretermit any issues properly before us, we conclude that the trial court did not err when it sentenced the Defendant to consecutive sentences.

_____

ROBERT W. WEDEMEYER, JUDGE